UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| PATRICK LEJUAN STOKES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV621-011 |
| | ) | |
| JAVAKAH JOHNSON, and TREVONZA BOBBIT, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Proceeding *pro se* and *in forma pauperis*, Plaintiff Patrick Stokes brings this 42 U.S.C. § 1983 action against Warden Bobbitt and Unit Manager Johnson of Georgia State Prison ("GSP"). Doc. 1. The Court granted Plaintiff's request to pursue his case *in forma pauperis* (IFP), doc. 4, and he returned the necessary forms, docs. 8 & 9. Because he is proceeding IFP, Plaintiff's pleadings must be screened to protect potential defendants. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984); *Al-Amin v. Donald*, 165 F. App'x 733, 736 (11th Cir. 2006); 28 U.S.C. § 1915A.

I. **Background**

Plaintiff alleges that Defendants violated his civil rights during his incarceration at GSP. Doc. 1 at 3. He claims that after being released from the suicide unit at GSP he told Defendant Johnson he was no longer affiliated with the "Blood" gang, and thus being placed in a cell with "a Blood" would put his life in danger. *Id.* at 5. Johnson and Lieutenant Anderson moved him into a cell, but when Stokes saw his new cellmate, he told Anderson, "this not going to work." *Id.* It is not readily apparent from the Complaint whether the new cellmate was problematic because of an affiliation with the gang. Stokes also relayed his concerns to Johnson, who "still pressed[ed] [Stokes] in the cell." *Id.* Stokes alleges that he and the cellmate "had problems" the next day. *Id.* When Stokes again informed Johnson that he needed to be moved, Johnson revoked his shower privileges. *Id.* The day after that, Stokes and his cellmate "got into a fist fight." *Id.* Stokes told Anderson, "see I told y'all," after which Anderson took Stokes and his cellmate to "medical." *Id.*

After leaving medical, Plaintiff was taken to intake and placed in a cell with no toilet or sink for four days until he was taken to the

"informey" shower.[1]  *Id.*  He was kept in the shower, which also did not have a toilet, for one day.  *Id.*  While in both the intake cell and the shower, he was forced to use cups, trays, and a bag to relieve himself, and he drank water from the shower head.  *Id.*  He was finally taken from the infirmary shower on December 29, 2020 and placed in a cell.  *Id.* at 6.  It is unclear from Plaintiff's Complaint, but he appears to allege that he was again placed with "a Blood", but after being housed in the shower, he agreed to see if the cellmate worked.  *Id.*  However, three days later, the cellmate was moved and replaced with someone Plaintiff "knew of from been [sic] here and knew we wasn't going to make it."  *Id.*

On January 6, 2021 Plaintiff's new cellmate called Johnson to the cell and informed him that he feared for his life.  After Johnson left, the inmate "stole off on" Plaintiff which "le[]d to [them] fighting."  *Id.* at 6.  Again, Plaintiff's Complaint is difficult to discern, but it appears that his face was injured in the fight.  The next day, Plaintiff told "them"—it is not clear who—he could not go back into the cell and "acted like [he] was cutting."  *Id.*  He was then taken back to medical where he admitted that

---

[1] The Court interprets this as Plaintiff being taken to the shower in the infirmary because Plaintiff later references the location as "the medical informery shower." Doc. 1 at 5.

3

he was not suicidal and explained that he "just couldn't be in that cell." *Id.* The officers did not move him back to the "ACU unit." *Id.* Plaintiff then explained his situation to Johnson, who took him to a holding cage that Plaintiff describes as eight inches wide and around six feet tall, with no toilet and water. *Id.* He was there from January 7th until January 9th, when he was removed. *Id.* The officers attempted to place him in another cell but "the person refused" to let him in, so Plaintiff was returned to the "cage" until January 13. *Id.* When he was finally placed in a cell, he had no mat, and the toilet did not work. *Id.* For his troubles, Plaintiff seeks $100,000 in damages. *Id.* at 7.

## II.   Legal Standard

The Court reviews Plaintiff's claim pursuant to 28 U.S.C. § 1915A to determine whether he has stated a colorable claim for relief under 42 U.S.C. § 1983. A complaint or any portion thereof may be dismissed if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276,

1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Stokes is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

### III.  Discussion

As much as the Court can discern of Plaintiff's allegations, it appears he seeks to pursue a claim that the Defendants failed to protect him from an unreasonable risk of harm by placing him in a cell with gang members after he told them he was no longer affiliated with that gang. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Merely negligent failure to protect an inmate from attack does not justify

liability under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Plaintiff's present allegations do not state a claim, but his failures might be correctable on amendment.

Plaintiff has not alleged facts which tend to show that Defendants had the requisite level of knowledge to establish an Eighth Amendment Claim. He claims he told Defendant Johnson he was no longer a "Blood" gang member, and thus being placed in a cell with a Blood would put his life in danger. However, he fails to make clear vital information: first, whether he faced active threats from the gang, and second, whether he was in fact first placed with a gang member at all. Although his allegations may ultimately prove too vague to survive, "[w]hether a prison official had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in the usual ways, including inference from circumstantial evidence." *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at

6

842 (quotation marks omitted)). At this screening stage, his vague allegations regarding the Defendants' knowledge are not fatal to his claim, but he is directed to provide more details as to his allegations. *See Rodriguez*, 508 F.3d at 617 (Where inmate told official specific details, such as: that he had renounced his gang membership; that members of former gang threatened to kill him when he returned to general population; pointed to the number of gang members in the compound; and specifically requested protection, but was ignored, court found that a reasonable juror could find violation); *but see Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (where inmate never told prison officials that he "feared" his attacker, never told them that he had been "clearly threatened," and never asked to be placed in "protective custody," court concluded that comments were too vague to establish that either Defendant had a "subjective awareness of a substantial risk of serious physical threat to Plaintiff.").

There is a more glaring defect in Plaintiff's current allegations. He fails to assert that the Defendants were "in a position to take steps that could have averted the [] incident . . . but, through [deliberate] indifference, failed to do so." *Williams v. Bennett*, 689 F.2d 1370, 1384

(11th Cir. 1982). Indeed, it is unclear why he thinks Bobbitt is culpable at all as Bobbitt is not even mentioned in Plaintiff's factual allegations. *See Coleman v. Bowden*, 797 F. App'x 422, 427 (11th Cir. 2019) (Plaintiff failed to state a claim where he did not allege facts to show that supervisory official personally participated in, or directly caused, him to be attacked by his cellmate). Although Plaintiff does mention Defendant Johnson's presence several times, and references him as "unit manager Johnson," doc. 1 at 6, he does not claim that he was in any position to protect him. *See Rodriguez*, 508 F.3d at 622 (explaining that, for purposes of determining whether the defendant caused the violation, the critical question was whether the defendant was "in a position to take steps that could have averted the stabbing incident . . . but through deliberate indifference, failed to do so.").

Another issue Plaintiff must confront is his own culpability in the altercations. Plaintiff, perhaps intentionally, is ambivalent about the source of the fights and does not explicitly state who made the first move. He appears to neither accuse his cellmates nor explain his own actions, describing the fights as though they developed outside of his or his cellmates' control. However, a plaintiff only states a claim for failure to

protect if he did not instigate the altercation leading to his injury, notwithstanding his own opinion about prison dynamics and what necessitates a brawl. *See, e.g.*, *Clark v. Johnson*, 181 F. App'x 606, 607 (7th Cir. 2006) ("[P]rison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner."); *Buckman v. Halsey*, 2020 WL 5076695, at *5 (M.D. Fla. Aug. 26, 2020) ("Plaintiff cannot prove a failure-to-protect claim against Defendant when Plaintiff was the one who physically advanced toward Ash" and collecting cases); *Lemmons v. Durant*, 2011 WL 4633104, at *3 (C.D. Ill. Oct. 4, 2011) ("[S]tarting a fight or voluntarily participating in one and then getting the worst of it does not create a failure to protect claim."). Specifically, Plaintiff's allegation that his cellmate "stole off on me that lead to us fighting" must be clarified as it is completely unclear, especially considering that it was Plaintiff's cellmate who reported to officials that he feared for his life. Doc. 1 at 6. Plaintiff must provide more details to the Court regarding his allegations before the Court can determine whether he has stated a constitutional failure to protect claim.

Plaintiff next appears to complain about the conditions of his separate and brief confinements in the intake cells, the infirmary shower, and the "holding cages" which he describes as being 8 inches wide and 6 feet tall. Doc. 1 at 6. None of these makeshift cells had operational toilets. *Id.* To the extent Plaintiff seeks to claim that these placements constitute cruel and unusual punishment, his allegations fail.

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. The challenged condition must be "extreme." *Hudson*, 503 U.S. at 9. Additionally, in determining the nature of the condition, "the Eighth Amendment is concerned with both the severity and the duration of [a] prisoner's exposure to [unpleasant conditions]." *Chandler*, 379 F.3d at 1295. Second, Plaintiff must satisfy a subjective prong by showing that Defendants acted with a culpable state of mind, which is judged under a "deliberate indifference" standard. *Id.* at 1289.

There is no constitutional requirement for access to a working toilet. Indeed, courts within the Eleventh Circuit have repeatedly refused to find Eighth Amendment violations based on short term unavailability of traditional toilets with or without ideal water pressure, or even exposure to overflowing toilets. *See, e.g., Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (affirming dismissal of Eighth Amendment claim based on confinement in cell for eighteen days without properly functioning toilet); *Anderson v. Chapman*, 2013 WL 4495827, at *4-*6 (M.D. Ga. Aug. 20, 2013) (granting defendants summary judgment where prisoner alleged placement on suicide watch for five days with no access to clothing, mattress, blanket, toilet paper, water or showers, and forced sleeping on floor with dried urine, blood and feces), *aff'd,* 604 F. App'x 810, 814 (11th Cir. 2015); *Dixon v. Toole*, 2006 WL 1038433, at *5 (S.D. Ga. Apr. 13, 2006) (finding no Eighth Amendment violation for suicide watch cell at Webster Detention Center, including hole in floor for toilet), *aff'd,* 225 F. App'x 797, 799 (11th Cir. 2007). As the conditions described by Plaintiff were experienced for a relatively short time, they do not appear sufficiently "extreme," and thus fail to implicate the Eighth Amendment's prohibition on cruel and unusual punishment.

Additionally, Plaintiff has not asserted that any official "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson,* 503 U.S. at 8 (quotation marks and citation omitted). The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294 (1991). Plaintiff must shoulder a three-part burden to establish deliberate indifference by showing Defendants not only had (1) subjective knowledge of a risk of serious harm, but they also (2) disregarded that risk, (3) by conduct that is more than gross negligence. *Goebert v. Lee County*, 510 F.3d 1312, 1326–27 (11th Cir. 2007). Here, Plaintiff not only fails to assert that any official was deliberately indifferent to his plight— meaning the official knew of and ignored the potential harm—he also appears to admit a justification for being placed in more restrictive confinement. Specifically, Plaintiff appears to describe himself claiming false suicidal ideation in order to be moved from one cell to another. *See* doc. 1 at 6 ([I] acted like I was cutting and they took me to medical . . .but I told the nurse I wasn't suicide I just couldn't be in that cell."). To be clear, it is not known whether he was placed in the infirmary because he was on suicide watch. It is not known whether he was placed in the "cage" as punishment for fighting or faking a suicide attempt. But he

admits that he was placed in that more restrictive confinement for only a brief duration after he pretended to be suicidal, and he does not allege that anyone was aware of but disregarded any harm resulting from the conditions within that confinement. Given his additional failure to allege a sufficiently extreme condition incidental to that temporary confinement, he fails to state a conditions of confinement claim, and amendment would be futile.

## IV. Conclusion

A *pro se* plaintiff is entitled to at least one opportunity to amend potentially viable claims. *Jenkins v. Walker*, 620 F. App'x 709, 711, (11th Cir. 2015) ("When a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2)(courts should grant leave to amend "freely . . . when justice so requires"). Because Plaintiff has alleged neither sufficiently severe conditions or deliberate indifference, his conditions of confinement claim fails and is dismissed.

However, the pleadings suggest that he could potentially resuscitate his failure to protect claim –his claim that he was placed in

cells with gang members—by providing additional factual detail regarding his communications with Defendants, his placement in cells with gang members, and how fights started. Accordingly, the Court will afford him a single opportunity to amend his complaint to plead *only* his failure to protect claim against Defendants in accordance with the above.

Plaintiff's Conditions of Confinement claim is **DISMISSED**. Plaintiff is **DIRECTED** to file his amended complaint regarding his surviving failure to protect claim no later than fourteen days from the date of this Order correcting the deficiencies noted above. He is advised that his amended complaint will supersede the original complaint and therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading"). Failure to comply will result in dismissal. *See* Fed. R. Civ. P. 41(b); S.D. Ga. L. Civ. R. 41.1.

Meanwhile, it is time for plaintiff to pay his filing fee. His most recent PLRA paperwork reflects $0.00 in average monthly deposits over the six-month period prior to the date of his Prison Account Statement, and an average monthly balance of $0.00. Doc. 9. He therefore owes a $0.00 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[2]

Furthermore, as noted above, Plaintiff was housed at GSP, a prison which was shuttered in 2022. Plaintiff submitted a "Notice," doc. 7, to this Court on March 10, 2021 which may constitute a good faith attempt to comply with local rules requiring parties to keep the Court apprised of their address. S.D. Ga. L.R. 11.1 ("Each attorney and *pro se* litigant has a continuing obligation to apprise the Court of any address change.").

---

[2] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

However, the document is not explicit. It first lists his address at the time of filing, which was at GSP, followed by another address with the word "Mom" written at the top. The **Clerk is DIRECTED** to mail a copy of this order to both addresses listed in doc. 7, to provide the Plaintiff with sufficient opportunity to amend in compliance with the present Order.

**SO ORDERED**, this 4th day of April, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA